UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GOURPRIYA SAHA,

Plaintiff,

- against -

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-2797 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Gourpriya Saha filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which had denied Plaintiff benefits. In response to a Joint Motion to Remand, the Court reversed and remanded the case to the SSA for further proceedings under 42 U.S.C. § 405(g), where Plaintiff was ultimately awarded roughly $60,445 in past-due benefits. The parties subsequently stipulated to an award of $1,300.20 in attorney fees for Plaintiff's counsel, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Plaintiff now moves for $6,200 in attorney's fees pursuant to 42 U.S.C. § 406(b) ("Section 406(b)") for the work performed in this matter by Plaintiff's counsel, Daniel A. Osborn. For the reasons explained below, Plaintiff's motion is granted in part and denied in part, and Mr. Osborn is awarded $4,425.

## BACKGROUND

After Plaintiff was denied benefits at the agency level, Plaintiff retained Daniel A. Osborn from Osborn Law, P.C. and filed this action on April 14, 2023. (Compl., Dkt. 1.) Four months after Plaintiff filed her Complaint, Defendant Commissioner filed the administrative transcript from the SSA. (Administrative Tr., Dkt. 7.) That same day, the parties jointly moved to remand to the SSA. (Joint Mot. Remand, Dkt. 8.) On August 16, 2023, the Court granted the motion,

reversing and remanding to the SSA, and entering judgment in favor of Plaintiff. (8/14/2023 Dkt Order; J., Dkt. 11.) The parties subsequently stipulated to an award of $1,300.20 in attorney fees for Plaintiff's counsel, pursuant to the EAJA. (Joint Mot. Att'y Fees, Dkt. 12). On September 27, 2025, the SSA mailed Plaintiff a Notice of Award letter informing her that she would receive approximately $60,445[1] in past-due benefits, with $15,111.25, approximately 25%, withheld as possible fees for Plaintiff's attorney. (Notice Award Letter ("Award Ltr."), Dkt. 14-5 at ECF[2] 2–3.). On October 29, 2025, Mr. Osborn received a copy of the Notice of Award letter by email. (Dkt. 14-6 at ECF 2.)[3] By motion filed on November 12, 2025, Mr. Osborn now seeks $6,200[4] for work performed before this Court. (*See* Pl.'s Mem. Supp. Mot. Att'y Fees ("Fees Mem."), Dkt. 14-7, at 1.)

Along with Mr. Osborn's Motion, he submitted a fee agreement demonstrating that Plaintiff Saha retained Mr. Osborn on a 25% contingency-fee basis, (Dkt. 14-2 at ECF 2–3), and itemized time records, indicating that he spent a total of 3.1 hours litigating this matter before this

---

[1] The letter does not state the exact amount of past-due benefits awarded, but notes that the SSA "usually" withholds 25% for potential attorney's fees and, in this case, was withholding $15,111.25. (Notice Award Letter ("Award Ltr."), Dkt. 14-5 at ECF 3.) Based on this information, the Court infers that the total amount of benefits Plaintiff received was $60,445, *i.e.*, 4 × $15,111.25.

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] Mr. Osborn explains that the delay in his receiving notice of the letter was due to the SSA mailing the Notice of Award letter to a different attorney who had represented Plaintiff before the SSA. (*See* Pl.'s Mem. Supp. Mot. Att'y Fees ("Fees Mem."), Dkt. 14-7, at 2–3.)

[4] Plaintiff's counsel variously refers to seeking $6,200 and $6,300. (*Compare* Fees Mem., Dkt. 14-7 at 1, 4 (referring to "$6,200") *with id.* at 5–6 (referring to "$6,300"). Mr. Osborn's references to "$6,300.00" appear to be scrivener's errors, which is supported by his statements that he spent 3.1 hours on this case, and that he seeks "an amount that yields an effective hourly rate of $2,000.00." (*Id.* at 5.) The Court assumes the requested amount is $6,200.

Court, (Dkt. 14-3 at ECF 3–4). In addition, Mr. Osborn's paralegal contributed 5.5 hours of work. (*See id.*)

## DISCUSSION

### I. Timeliness

Motions for attorney's fees under Section 406(b) of the Social Security Act must be filed within the 14-day filing period proscribed by Federal Rule of Civil Procedure ("Rule") 54(d). *Sinkler v. Berryhill*, 932 F.3d 83, 86–89 (2d Cir. 2019). The 14-day period begins to run from when "counsel receives notice of the benefits award," *id.* at 88, and the law presumes that "a party receives communications three days after mailing," *id.* at 89 n.5 (citing *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011)). Furthermore, because Rule 54(d) allows courts to extend the 14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89 (citations omitted).

Here, Mr. Osborn received the notice of the benefits award on October 29, 2025. (Dkt. 14-6 at ECF 2.) Mr. Osborn filed the Motion on November 12, 2025, 14 days later. (Mot. Att'y Fees, Dkt. 14.) The Motion is thus timely filed.

### II. Reasonableness of the Requested Fee

#### A. Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A). If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) "the character of the representation and the result the representative achieved," *id.* at 849 (citations omitted); (2) "whether a claimant's counsel is responsible for undue delay," unjustly allowing counsel to obtain a percentage of additional past-due benefits,[5] *id.* at 849 & n.2 (citations omitted); and (3) whether the requested amount is so "large in comparison to the time that counsel spent on the case" as to be a "windfall" to the attorney, *id.* at 853 (citations omitted). Ultimately, a district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

The windfall factor is not equivalent to the traditional "lodestar" inquiry, where a court is called on to act as an arbiter of "'reasonableness' between the opposing interests of the prevailing plaintiffs and losing defendants." *Id*. at 854 (quoting *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990)). Rather, "courts must consider more than the *de facto* hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do," *id*; (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *id.* at 855; (3) "the satisfaction of the disabled claimant," *id.*;

[5] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery." (citing *Gisbrecht v. Barnhart*, 535 U.S. 789, 791 (2002) (noting that "where the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court"))).

and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," *id.*

In addition, if fee awards are made to a claimant's attorney under both the EAJA and Section 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients.").

### B. Application

Here, Plaintiff retained Mr. Osborn pursuant to a 25% contingency-fee agreement. (Dkt. 14-2 at ECF 2.) There are no allegations of fraud or overreach with respect to the retainer agreement. Mr. Osborn seeks $6,200, which is less than the full 25% of Plaintiff's past-due benefits. (*See* Fees Mem., Dkt. 14-7, at 4.) At 3.1 hours of work, that would be an effective hourly rate of $2,000 per hour. (*Id.* at 5.) However, Mr. Osborn's paralegal, whose normal billing rate is $100 per hour, also completed 5.5 hours of work on behalf of Plaintiff. (*See* Dkt. 14-3 at ECF 4.) When accounting for the paralegal's additional work at an hourly rate of $100—*i.e.* ($6,200 - $550) divided by 3.1—Mr. Osborn's effective hourly rate is only $1,822.58.[6] For the reasons explained below, the Court finds that amount to be unreasonable in the context of this case.

To determine reasonableness, the Court first considers "the character of the representation and the results the representative achieved." *Fields*, 24 F.4th at 849. Here, Mr. Osborn represented Plaintiff before this Court in appealing the denial of her SSA disability benefits. (Fees Mem., Dkt.

---

[6] *See, e.g.*, *Long v. Comm'r of Soc. Sec.*, No. 18-CV-1146 (PKC), 2020 WL 6545904, at *3 (E.D.N.Y. Nov. 6, 2020) (deducting paralegal time at $100 per hour to calculate the effective attorney hourly rate); *Velasquez v. Comm'r of Soc. Sec.*, No. 21-CV-0892 (PKC), 2025 WL 1249604, at *3 (E.D.N.Y. Apr. 30, 2025) (same); *Logan v. Comm'r of Soc. Sec.*, No. 23-CV-1813 (PKC), 2026 WL 787870, at *1 (E.D.N.Y. Mar. 20, 2026) (same).

14-7, at 3.) The activities that Mr. Osborn undertook related to the appeal included reviewing the previous case materials (including the Administrative Law Judge's and the SSA Appeals Council's decisions as well as other documents provided by Plaintiff), approving the case for filing, and corresponding with opposing counsel regarding stipulating to remand. (*See* Dkt. 14-3 at ECF 3.) Meanwhile, Mr. Osborn's paralegal corresponded with Plaintiff, reviewed case documents, and drafted court filings. (*See id.* at ECF 3–4.) Because Mr. Osborn received the case from another attorney who represented Plaintiff before the SSA, Mr. Osborn and his paralegal spent some time reviewing prior case materials in preparation to represent Plaintiff before this Court. (*See* Fees Mem., Dkt. 14-7, at 3.) Ultimately, Mr. Osborn secured a joint stipulation to remand to the SSA to reconsider the denial of disability benefits to Plaintiff. (Joint Mot. Remand, Dkt. 8.) However, Mr. Osborn's time records reflect that he spent only 0.3 hours in total on the remand stipulation—0.1 hours for each of reviewing an email, responding to the email, and reviewing the draft stipulation—which suggests that he likely received a proposal to remand from opposing counsel, and at a minimum did not expend substantial efforts to secure the stipulation. (*See* Dkt. 14-3, at ECF 3 (reflecting only 0.3 hours spent on the stipulation).) While the limited efforts were reasonable under the circumstances, it is nonetheless true that the successful result appears largely unrelated to his representation. The Court finds that this factor warrants a downward adjustment.

Second, the Court must determine whether counsel was responsible for undue delays that would unjustly allow counsel to receive a percentage of additional past-due benefits caused by such delays. *Fields*, 24 F.4th at 849. Here, there is no evidence of Mr. Osborn being responsible for any undue delays: the SSA notified Plaintiff of a final denial of benefits on February 14, 2023, (*see* Compl., Dkt. 1, ¶ 11), Plaintiff engaged Mr. Osborn on April 10, 2023, (*see* Dkt. 14-3, at ECF 6), and counsel filed the Complaint on April 14, 2023, just four days later, (*see* Compl., Dkt.

1). Rather, the only relevant delay was caused by Defendant. (*See* Dkt. 6 (Defendant requesting extension to file the administrative transcript).) Accordingly, consideration of this factor does not give any reason to reduce the fee amount.

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 854. The Court analyzes four factors in determining whether a requested amount qualifies as a windfall. *See id.* at 854–56

First, with respect to "the ability and expertise of the lawyers and whether they were particularly efficient," *id.* at 854, the Court finds that 3.1 hours was a reasonable amount of time to spend on this matter given what counsel was able to achieve. In *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work, justifying a *de facto* hourly rate of $1,556.98. *Id.* Here, Mr. Osborn's securing a joint stipulation of remand was neither particularly efficient nor indicative of specialized expertise on counsel's part. No briefing or oral argument preparation was required of counsel prior to the stipulation agreement. (*See* Dkt. 14-3 at ECF 3–4 (reflecting no work after filing the Complaint other than 0.3 hours corresponding with opposing counsel regarding remand).) Nonetheless, 3.1 hours is a limited and reasonable period of time to have spent preparing the Complaint and corresponding with government counsel regarding the joint stipulation to remand. Thus, consideration of this factor does not merit a downward adjustment.

Second, with respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *Fields*, 24 F.4th at 855, the Court notes that Mr. Osborn did not represent Plaintiff in front of the SSA before filing this suit, (*see*

Fees Mem., Dkt. 14-7, at 3). In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall. *See* 24 F.4th at 855. Here, Mr. Osborn only represented Plaintiff in her challenge to her SSA disability benefits before this Court and Plaintiff did not retain counsel prior to the district court proceedings. (*See* Fees Mem., Dkt. 14-7, at 3.) Mr. Osborn represented Plaintiff starting from the referral of her case to him on March 29, 2023, until the joint stipulation of remand was entered by the Court on August 11, 2023. (*See* Dkt. 14-3 at ECF 3–4.) Furthermore, even during the five-month period, Mr. Osborn and his paralegal were only in substantial communication with Plaintiff for the three-week period in which they were taking on her case and preparing her Complaint. (*See id.*) This representation does not reflect the building of a meaningful attorney-client relationship comparable to that developed in *Fields* where the attorney represented a client during multiple rounds of litigation. *See* 24 F.4th at 855. Given Mr. Osborn's brief representation of Plaintiff in district court, the Court finds that this factor warrants a downward adjustment.

Third, in examining "the satisfaction of the disabled claimant," *id.*, the Court presumes that Plaintiff is satisfied with the results, with no evidence to the contrary. *See Gray v. Comm'r of Soc. Sec.*, No. 20-CV-3916 (PKC), 2023 WL 3948796, at *4 (E.D.N.Y. June 12, 2023). Counsel's efforts, even if limited, did result in a joint stipulation of remand, allowing Plaintiff to receive reconsideration by the SSA as to her past and future disability benefits. (*See* Joint Mot. Remand, Dkt. 8.) Hence, on this factor, a reduction of the fee amount is not justified.

Lastly, with respect to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," *Fields*, 24 F.4th at 855–56, the SSA agreed to a joint stipulation of remand without Mr. Osborn submitting any briefing, (*see* Joint Mot. Remand, Dkt. 8), suggesting the case was extremely likely to result in a remand, regardless of counsel's efforts, *see Fields*, 24 F.4th at 850 ("A windfall is more likely to be present in a case . . . where the lawyer takes on a contingency-fee representation that succeeds immediately and with minimal effort, suggesting very little risk of nonrecovery."). Given the apparent certainty of the outcome and the minimal effort necessary to achieve that result, the Court finds that this factor warrants a downward adjustment.

Though the Court finds downward adjustment of Mr. Osborn's attorney fees to be necessary based on multiple of the *Fields* factors, the Court acknowledges that Mr. Osborn is requesting only $6,200, not $15,111.25—the full 25% that he was entitled to under the contingency-fee agreement. *See Krupnick v. Saul*, No. 13-CV-3992 (DLI), 2020 WL 6161251, at *2 (E.D.N.Y. Oct. 21, 2020) (recognizing that a request for only 66% of the amount counsel was entitled to under the contingency-fee agreement factored into the reasonableness of the requested fee amount). Nonetheless, an effective hourly rate of $1,822.58 would be unreasonable in this case given the circumstances. Therefore, the Court finds that an effective hourly rate of $1,250 would be reasonable and result in an award of $4,425—*i.e.* $3,875 (3.1 attorney hours multiplied by $1,250) plus $550 (5.5 paralegal hours multiplied by $100).

For the reasons explained above, based on the downward adjustments under multiple factors, the Court finds the requested amount of $6,200 to be unreasonable and reduces the amount to $4,425. Additionally, upon receiving the Section 406(b) award, Daniel A. Osborn must remit the $1,300.20 received pursuant to the EAJA to Plaintiff.

## CONCLUSION

For the reasons explained above, the pending motion for attorney's fees under 42 U.S.C. § 406(b) is granted in part and denied in part, and Daniel A. Osborn is awarded $4,425. Upon receipt of this award from the government, Daniel A. Osborn shall promptly refund Plaintiff $1,300.20, which represents the EAJA fees already received by counsel. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 17, 2026
Brooklyn, New York